IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:08-CR-368-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CURTIS LAKOY EDMONDS | ) | |
| | ) | |
| Defendant. | ) | |

This Cause comes before the Court on the Defendant's Motion to Suppress. **[DE-39]**. The Government has responded. **[DE-43]**. The Court held an evidentiary hearing on April 9, 2009, to develop the record. **[DE-49]**. After the hearing, both parties submitted supplemental memoranda in support of their respective arguments. **[DE-51 & 52]**. Accordingly, this matter is ripe for disposition.

**I. STATEMENT OF THE CASE**

On December 3, 2008, the Defendant was charged with: one count of conspiracy to distribute and to possess with intent to distribute more than fifty (50) grams of cocaine base (crack), a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1); two counts of possessing with intent to distribute more than five (5) grams

1

of cocaine base (crack), a Schedule II controlled substance, in violation of Title 21, United States Code Section 841 (a)(1); and one count of aiding and abetting the same. **[DE-1]**.

In his motion to suppress, the Defendant asserts that, because he was under the influence of a controlled substance at the time of his arrest and interrogation, he did not understand his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). **[DE-39, p. 1]**. The Defendant also contends that law enforcement officers coerced him into making incriminating statements during his interrogation. **[DE-39, pgs. 1-2]**. For the reasons stated below, these arguments are without merit.

## II. DISCUSSION

### A. Knowing and Intelligent Waiver of Miranda Rights

In Miranda, the Supreme Court held that once a suspect is given the warning of their rights under the Fifth amendment, they can "'waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently.'" United States v. Smith, 608 F.2d 1011, 1012 (4th Cir. 1979) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Counsel for the Defendant argues that his client did not understand, and therefore did not knowingly waive, his Fifth Amendment right to remain silent, because he was "under the influence of heroin" at the time of his arrest and interrogation. **[DE-39, p. 1]**. "The test of whether a person is too affected by . . . drugs [to] voluntarily and intelligently . . . waive his rights is one of coherence, of an understanding of what is happening." Smith, 608 F.2d at 1012; see also, Moran v. Burbine, 475 U.S. 412, 421 (1986) (stating that to knowingly waive his rights, a suspect must "have . . . full awareness of both the nature of the right being

2

abandoned and the consequences of the decision to abandon it").

During the hearing, the Defendant proffered testimony from his sister, Ms. Frances Edmonds, and his mother, Ms. Frances Wilkerson, to relate his substance abuse history. Notably, Ms. Wilkerson was only able to offer background information about the Defendant's past drug abuse. She was not present when the Defendant was arrested, she did not observe the Defendant's alleged drug use before his arrest, and she did not observe his physical condition at the time of his arrest. [Ev. Tr. p. 23, ll. 10-22].[1] Therefore, her testimony is only tangentially relevant to the issue of whether the Defendant voluntarily and intelligently waived his Miranda rights; it is certainly not dispositive.

Ms. Edmonds, on the other hand, lived with the Defendant at their father's house at the time of his arrest and was present when he was arrested. [Tr. 4, ll. 3-7, 12-14]. She testified that the Defendant was "real high" on June 26, 2008, because she had observed him using marijuana and alcohol the night before. [Tr. 5, ll. 5-8]. She also testified that he used a white substance, which she believed to be heroin. [Tr. 8, ll. 23-25; p. 9, ll. 1-8]. She further stated that she knew the Defendant was "high" because he would nod off during conversations, was incoherent, and had an irregular gait. [Tr. 7, ll. 1-10].

Ms. Edmonds' testimony is insufficient to prove that the Defendant was under the influence of narcotics and alcohol when he was arrested. Specifically, Ms. Edmonds had trouble identifying exactly which drugs the Defendant had used before his arrest and the

---

[1] This citation refers to the transcript of the evidentiary hearing that took place on Thursday, April 9, 2009, at 8:30 a.m. Hereinafter, citation to the transcript will be referred to as "Tr."

3

amounts that he had ingested. [Tr. 8, ll. 18-25; p. 9, ll. 1-22]. She also admitted that she was not in constant contact with the Defendant at the times she alleged he was using drugs. [Tr. 9, ll. 23-25; p. 10, ll. 1-7]. Further, she testified that she does not use drugs herself. [Tr. 14, ll. 1-5].

Nonetheless, even if Ms. Edmonds' testimony was sufficient to prove that the Defendant had ingested drugs and alcohol shortly before his arrest, the Fourth Circuit has held that mere ingestion of drugs does not necessarily negate a knowing and intelligent waiver. See United States v. Sledge, 546 F.2d 1120, 1122 (4th Cir. 1977). In Sledge, the defendant challenged the voluntariness of his confession by testifying at his suppression hearing that "approximately two and one-half hours before he was questioned by the federal agents he had intravenously taken a combination of heroin and preludin. . . ." 546 F.2d at 1121. The interrogating agent testified that he "had seen others under the influence of narcotics to such an extent they could not be interviewed, but the defendant seemed normal and pleasant when he was questioned [and] was not nodding off and did not fall off [his] chair. . . ." Id. at 1122. After weighing this testimony, the district court concluded that the defendant had voluntarily, intelligently, and knowingly waived his Miranda rights even though it was uncontroverted that he had used narcotics on the day of his interrogation. Id. The Fourth Circuit affirmed the district court's decision. Id.

Assuming *arguendo*, that the Defendant was under the influence of drugs and/or alcohol before his arrest on June 26, 2008, there is no indication that he was incapacitated to such an extent that his statements were not the product of a free and rational choice. See

4

United States v. Cristobal, 293 F.3d 134, 142 (4th Cir. 2002) (affirming the district court's finding that a defendant's waiver of his Miranda rights and subsequent confession was knowing and voluntary even though he was under the influence of painkillers and narcotics). For example, Ms. Edmonds testified that when the Defendant was being arrested, he was cognizant enough to allay her fears about the officers' presence in their home, and even requested that she contact various family members to alert them of his arrest. [Tr. 13, ll. 7-16; p. 15, ll. 2-14]. Similarly, one of the arresting officers, Detective Kevin Dickerson, testified that when he arrested the Defendant: 1) he did not detect an odor of marijuana in the house; 2) there was nothing unusual about the Defendant's gait; 3) the Defendant's eyes were not swollen, runny, or puffy; 4) the Defendant's speech was not slurred; and 5) the Defendant appeared to be lucid and capable of understanding questions. [Tr. 45, ll. 3-25; p. 46, ll. 1-10]. Detective Dickerson further testified that the Defendant was alert, cooperative, and did not appear to be groggy during his interrogation. [Tr. at 28-29, ll. 15-16, 23, 1]. The Defendant was also able to provide specific historical information about the events surrounding his arrest, could identify his co-Defendant and her car from photographs, and could identify the voice of a confidential witness from taped recordings. [Tr. 30, ll. 16-22; p. 31, ll. 1-25; p. 32, ll. 1-16, p. 33, ll. 15-20].

Moreover, the detective was able to provide comparative testimony of the Defendant's behavior and physical appearance when he rearrested him on December 6, 2008. During the hearing, the Government illustrated the difference by admitting into evidence two photographs taken of the Defendant when he was arrested on June 26, 2008, and rearrested

5

on December 6, 2008. [Tr. 46, ll. 21-25; p. 47, ll. 1-25; p. 48, ll. 1-25, p. 49, ll. 1-17].

During the December 2008 arrest, the Defendant admitted that he had just taken his last "bump" of drugs prior to being arrested. [Tr. 34, ll. 18-25; p. 35, ll. 1-3]. Detective Dickerson testified that during the arrest, the Defendant "seemed very groggy" and incoherent; he did not understand what was going on, and the detective had to repeatedly tell him what was taking place. [Tr. 34, ll. 10-17]. In addition, for the Defendant's mug shot, he appeared to be "sick, groggy, [and] disheveled, to say the least." [Tr. 48, ll. 1-3]. As a result of the Defendant's behavior, Detective Dickerson declined to question him. [Tr. 35, ll. 4-12].

In sum, although the Court concludes that there is insufficient evidence to prove that the Defendant was under the influence of drugs and/or alcohol at the time of his arrest, even if he was under the influence, based on the evidence presented, he demonstrated a sufficient mental capacity to make a knowing and intelligent waiver of his Fifth Amendment right to remain silent. Accordingly, the Defendant's argument is without merit.

**B.** **Voluntary Waiver of Miranda Rights**

"A statement is involuntary under the Fifth Amendment only if it is involuntary within the meaning of the Due Process Clause." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997) (en banc). For a statement to be involuntary under the Due Process Clause, it must be "extracted by . . . threats, or violence"; or "obtained by . . . direct or implied promises" or "the exertion of improper influences." Id. However, the existence of coercive police activity alone will not nullify a voluntary confession. Id. Instead, the "proper inquiry 'is whether the defendant's will has been 'overborne' or his 'capacity for self-determination

6

critically impaired.'" Id. (quoting United States v. Pelton, 835 F.2d 1067, 1071 (4th Cir. 1987)). To determine whether the defendant's "will has been overborne" or "his capacity for self-determination has been critically impaired" the court's inquiry must focus on the "totality of the circumstances," which includes "the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id. (quoting Pelton, 835 F.2d at 1071).

Initially, counsel for the Defendant argues that his statements to law enforcement authorities were involuntary because the officers coerced him into telling them "what he thought they wanted to hear." **[DE-39, pgs. 1-2]**. Specifically, he argues that the officers "promised him that if he cooperated they would let him go home." **[DE-39, pgs. 1-2]**. He further argues that they told him that "if he did not admit to being guilty that his girlfriend and co-defendant . . . would 'lose her job.'" **[DE-39, p. 2]**.

However, at the hearing in this matter, Detective Dickerson testified that he did not make any promises or assurances about the Defendant's freedom in exchange for his cooperation. [Tr. 43, ll. 5-8, 21-24]. He further stated that he did not make any statements to the Defendant regarding the loss of the co-Defendant's job or her criminal culpability. [Tr. 42, ll. 13-25, p. 43, ll. 1-4]. In light of this testimony, the Defendant now "readily admit[s] that [his] allegations of oppressive government conduct . . . did not materialize at the hearing. . . ." **[DE-51, p. 1]**. Nonetheless, he has chosen not to "abandon[] this claim. . . ." **[DE-51, p. 1]**.

However, without persuasive evidence to rebut Detective Dickerson's testimony, the

7

Defendant's sole argument to support his claim is that because of his extensive criminal history, it is unlikely that he would make incriminating statements to law enforcement authorities without being coerced and mentally impaired. **[DE-39, pgs. 3-4]**. This argument must fail. It not only flies in the face of experience, but the Court fully credits Detective Dickerson's testimony refuting the Defendant's characterization of his interrogation and has concluded that he had sufficient mental capacity to knowingly waive his rights. Accordingly, the Defendant's argument is without merit.

### III. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the Defendant's Motion to Suppress **[DE-39]** be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 15th day of April, 2009.

_____
William A. Webb
U.S. Magistrate Judge